* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Ledford with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. The Industrial Commission has jurisdiction over the parties and the subject matter.
3. The carrier on the risk is Federated Mutual Insurance Company.
4. An employee-employer relationship existed between plaintiff and defendant-employer on December 1, 2001.
5. Plaintiff's average weekly wage was determined from a Form 22, which was submitted as Stipulated Exhibit 1. Based upon the Form 22, plaintiff earned an average weekly wage of $ 383.37, yielding a compensation rate of $ 255.59.
6. Defendant-carrier entered into a Form 60 Agreement to pay compensation on December 27, 2001, and agreed to pay plaintiff compensation for injury to her left knee. The Form 60 was marked as Stipulated Exhibit 2, and indicates plaintiff was paid based upon an average weekly wage of $ 355.10 and a compensation rate of $ 236.74.
7. Plaintiff received payment of weekly compensation benefits for 5 and 2/7 weeks from December 2, 2001, through January 10, 2002, at the compensation rate of $ 236.74 per week.
8. A package of additional stipulated documents submitted by plaintiff's counsel on July 5, 2005 were also added to the evidence.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of hearing before the Deputy Commissioner, plaintiff was 38 years of age. She is a high school graduate. As of her injury date, plaintiff had worked for defendant-employer for about two and one-half months as a cook, waitress, and manager trainee. *Page 3 
2. On December 1, 2001, plaintiff slipped on some water in the kitchen floor, as she was starting out to take a food order to a customer. She fell to the floor, landing with her left leg under her.
3. Plaintiff was seen that day at Wake Forest University Baptist Medical Center where she presented with complaints of pain in her left knee. Plaintiff was examined, her left knee was X-rayed and she was diagnosed with a left knee contusion. Plaintiff was prescribed medication and crutches, excused from work and released with instructions to follow up with her primary care physician.
4. On December 10, 2001, plaintiff was examined at Concentra Medical Center by Dr. Oscar Gualteros. Plaintiff complained of pain in her left knee radiating from midshin to midthigh. Dr. Gualteros was unable to perform a complete examination because of plaintiff's crying and complaints of pain. He found some instability of the lateral ligaments, decreased range of motion, and inability to bear weight. Dr. Gualteros ordered an MRI for further assessment and referred plaintiff for physical therapy. Dr. Gualteros specifically indicated in his record that plaintiff had no problems moving her hip or her ankle. He diagnosed plaintiff with a left knee sprain, with probable ligamental/meniscal tear. Dr. Gualteros prescribed additional medications and instructed plaintiff to use a knee brace and her crutches. He released plaintiff to return to work under light-duty restrictions, with sitting ninety percent of the time.
5. That same day, plaintiff began physical therapy at Concentra Medical Center. Plaintiff reported to the physical therapist that she had been experiencing a burning, tingling, pins and needles sensation in her knee and pain which occasionally shot down from her left hip area and numbness on the left side when sleeping. *Page 4 
6. Plaintiff continued receiving conservative treatment at Concentra Medical Center through December 2001.
7. On January 4, 2002, plaintiff reported to Dr. Buchanan at Concentra Medical Center that she was experiencing pain located on the lateral aspect of her left knee, which radiated down her left hip. The pain was moderate, constant, sharp, burning, and there was associated numbness of her left leg. Upon examination, Dr. Buchanan noted that plaintiff had full range of motion of her left knee with tenderness along the medial aspect of the patella and along the medial joint line. Dr. Buchanan also examined plaintiff's back and noted tenderness at the L5-S1 level. As Dr. Buchanan specifically noted, plaintiff's subjective complaints were inconsistent with the objective findings. Dr. Buchanan assessed plaintiff with a knee strain as well as a lumbar strain, and continued her therapy and modified activity.
8. When plaintiff returned on January 11, 2002, she complained of constant severe pain, radiating down her left hip to her foot. Examination revealed tenderness at the L5-S1 level but full range of motion of the left hip. Dr. Buchanan again noted plaintiff's subjective complaints were inconsistent with objective findings. She also noted that plaintiff was observed to have an exaggerated antalgic gait and to be walking normal on a treadmill.
9. Plaintiff returned to Dr. Buchanan's office a final time on January 18, 2002. At that time, plaintiff reported that she had been taking her medication as instructed and had noted improvement, although she complained of ongoing left hip pain. Plaintiff's diagnosis was resolved left knee strain and she was released to return to work full duty. Dr. Buchanan noted that she was not authorized to treat plaintiff for her back condition.
10. Plaintiff voluntarily left her employment with defendant-employer on or about January 21, 2002, and has not returned to work with defendant-employer. *Page 5 
11. Dr. Buchanan testified that in her opinion, plaintiff's back condition is not causally related to her fall. However, Dr. Buchanan admitted upon cross-examination that "the back injury could possibly be from the fall." However, in that case, Dr. Buchanan would have expected plaintiff to complain at an earlier visit about back pain. The first complaint of back pain plaintiff made to a physician at Concentra was on January 4, 2002, although she had complained on December 10, 2001 to the physical therapist.
12. After her treatment at Concentra Medical Center ended, plaintiff was treated at Kernersville Family Practice. Dr. Boals of that practice referred her for physical therapy for her back. Plaintiff had been complaining of lower back pain that radiated down her left leg. Plaintiff participated in physical therapy from April 1 through April 18, 2002 and from July 18 through August 2, 2002 at Martinat Outpatient Rehabilitation Center.
13. On August 1, 2002, plaintiff was examined by physician's assistant Jeff Martin at Orthopaedic Specialists of the Carolinas. She complained of lower back and left leg pain and numbness. An MRI was performed on August 5, 2002, revealing mild degenerative disc disease at L4-5 with a small disc bulge. When plaintiff's MRI was reviewed on September 4, 2002, she was diagnosed with a herniated disc.
14. On September 26, 2002, Dr. Timothy W. McGowan of Orthopaedic Specialists of the Carolinas evaluated plaintiff. Dr. McGowan diagnosed plaintiff with mechanical back pain and pseudoradiculopathy related to degenerative disc disease at L4-5. In his medical notes, Dr. McGowan commented that he found this "in keeping with her work related injury since there were no prior back problems before her accident." Dr. McGowan did not believe plaintiff was a surgical candidate at that time and recommended conservative treatment. *Page 6 
15. Plaintiff was examined by Dr. Paul Brady of WFUP Orthopedics on November 25, 2002 for complaints of pain in the left side of her lower back which radiated down her left buttock, down the posterolateral aspect of her left leg past the knee, into the calf, and down to her foot. After a physical examination, Dr. Brady diagnosed plaintiff with L5-S1 nerve root impingement and recommended nerve root injections. He wrote her out of work for the next four weeks.
16. Plaintiff reported no significant lasting improvement from the nerve root injections prescribed by Dr. Brady. On April 8, 2003, Dr. Brady referred plaintiff to a pain control clinic and instructed plaintiff to return in three to four months.
17. On April 11, 2003, Dr. T. Stuart Meloy, of Piedmont Anesthesia and Pain Consultants, P.A., examined plaintiff pursuant to Dr. Brady's referral. On exam, Dr. Meloy found mild weakness in her left hip flexor and tenderness in her back, left side. A discogram was performed on May 5, 2003 and was normal, indicating that the discs at L4-5 and L5-S1 did not appear to be responsible for plaintiff's pain. Dr. Meloy diagnosed her with disc herniations at L4-5 and L5-S1, lumbar radiculopathy, facet syndrome and joint pain. He also placed plaintiff on Neurontin.
18. When plaintiff returned to Dr. Brady on July 21, 2003, she had seen Dr. Meloy, and had undergone a discogram and different injections, and reported to Dr. Brady that none of these helped at all. Dr. Brady had reviewed plaintiff's MRI with Dr. Peter Birkedal, and they were both of the opinion that she was not a surgical candidate. Plaintiff also agreed that she was not interested in surgery.
19. Plaintiff remained under the care of Dr. Brady through October 20, 2003, without experiencing significant relief of her back pain. At the time of her October 20, 2003 visit, *Page 7 
plaintiff had been evaluated by Dr. William Brown, a neurosurgeon, who had advised that a spinal fusion would only improve plaintiff's pain by twenty percent. Plaintiff was therefore not interested in surgery. On October 20, 2003, Dr. Brady released her from his care at maximum medical improvement and assigned a 20% permanent partial impairment to her back. Dr. Brady did not assign permanent work restrictions and indicated that plaintiff should continue to follow-up with the other physicians treating her for her back pain.
20. Plaintiff continued to treat with Dr. Meloy after being placed at maximum medical improvement by Dr. Brady in October 2003. On November 26, 2003, Dr. Meloy proceeded with a spinal cord stimulation trial. The spinal cord stimulator trial was unsuccessful. As Dr. Meloy testified, plaintiff simply turned the device off, saying it did not give the stimulation she wanted, and she did not really give it an adequate trial. Dr. Meloy began treating plaintiff first with Methadone then with Kadian after the unsuccessful spinal cord stimulator trial.
21. At her June 24, 2004 visit to Dr. Meloy, plaintiff reported that she had suffered a fall, with a left leg fracture, which she blamed on pain and weakness in her leg. She was wearing a soft cast on her left lower leg and ankle. Plaintiff's Kadian dosage was increased in part due to the pain she suffered from the leg fracture. On July 20, 2004, plaintiff reported that the increased dosage of Kadian was helping reduce her pain. Dr. Meloy found plaintiff to be at maximum medical improvement and stated that he did not anticipate any additional interventional therapies.
22. Plaintiff's back pain had increased by October 21, 2004, and Dr. Meloy again increased her dosage of Kadian and prescribed Vicodin for breakthrough pain. On February 22, 2005, plaintiff reported an increase in her back pain in addition to migraine headaches. She described her pain as stinging, throbbing, shooting, burning, and aching in her back and head. *Page 8 
Plaintiff's prescriptions for Skelaxin and Neurontin were refilled, and she was prescribed Axert for the migraine headaches.
23. Dr. Meloy is of the opinion that plaintiff's back complaints for which he has treated her stem from her fall at work, based upon the temporal nature of the fall and her subsequent complaints. At the time of his deposition in March 2005, plaintiff was still under Dr. Meloy's care for maintenance. Dr. Meloy testified that he has kept plaintiff out of work during his treatment and opined that plaintiff has plateaued.
24. Between August and November 2002, plaintiff worked as a custodian with Winston-Salem Forsyth County Schools. She earned $ 9.10 or $ 9.15 per hour and worked eight hours per day, three to five days per week. Plaintiff testified, and the records confirm, that Dr. Brady took her out of work as of November 25, 2002. Plaintiff has not returned to work since that time.
25. After the hearing before the Deputy Commissioner, defendants tendered the lay testimony of Mike Hodges by deposition. In that deposition, defendants attempted to introduce the hearsay testimony of Sharon Grubbs, in order to prove that plaintiff had fallen off a barstool while inebriated prior to her compensable fall on December 1, 2001. However, defendants did not tender convincing evidence that Ms. Grubbs is deceased or otherwise unavailable. Likewise, defendants failed to tender convincing evidence of their efforts to locate her in support of their offer of proof for her hearsay statement. Finally, the undersigned do not find Mr. Hodges testimony to possess "equivalent circumstantial guarantees of trustworthiness." Therefore, the hearsay evidence of what Sharon Grubbs may have said is excluded.
26. In weighing the evidence, considering the temporal relationship between plaintiff's fall at work and her onset of back pain, and the opinions of Dr. Meloy and Dr. *Page 9 
McGowan, the greater weight of the evidence shows a causal connection. Plaintiff's fall at work aggravated or accelerated her degenerative disc disease, to the point that she became symptomatic. To the extent that Dr. Buchanan expressed a different opinion on the causal connection, considering that she did not examine plaintiff to rule out a back injury, while Dr. McGowan and Dr. Meloy assessed plaintiff for her back complaints, the undersigned assign greater weight to the testimony of Dr. Meloy and the opinion of Dr. McGowan as expressed in his medical notes.
27. Based upon the greater weight of the evidence, plaintiff continues to suffer back pain related to her fall at work on December 1, 2001. Due to her ongoing back pain, plaintiff has been unable to earn wages in any employment since November 25, 2002, when Dr. Brady took her out of work.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Defendants failed to satisfy the requirements of N.C. Gen. Stat. § 8C-1-804(b)(5) in order to introduce the hearsay statements of Sharon Grubb through the testimony of Mike Hodges, and his testimony regarding what Sharon Grubb allegedly told him about plaintiff falling from a barstool before her accident at work is therefore inadmissible and shall be stricken from the evidence of record.
2. Based upon the greater weight of the evidence, plaintiff's back condition is causally related to her compensable fall that occurred on December 1, 2001. N.C. Gen. Stat. § 97-2(6), Click v. Pilot FreightCarriers, Inc., 300 N.C. 164, 265 S.E.2d 389 (1980). *Page 10 
3. Defendants are responsible for payment of all medical expenses incurred or to be incurred by plaintiff for reasonably necessary treatment of her back condition following the injury by accident of December 1, 2001. N.C. Gen. Stat. §§ 97-2(19), 97-25.
4. Due to her ongoing back pain, plaintiff has been unable to earn wages in the same or any other employment, and has been totally disabled since November 25, 2002. Defendants are responsible for paying plaintiff ongoing total disability at the rate of $ 255.59 per week beginning November 25, 2002 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
5. Defendants are responsible for payment to plaintiff of compensation of $ 18.85 per week for the difference between the correct compensation rate of $ 255.59 calculated from the Form 22 and the rate at which benefits were previously paid, $ 236.74, for the period previously paid of December 2, 2001 through January 10, 2002. N.C. Gen. Stat. § 97-29.
6. Plaintiff's request for attorney's fee pursuant to N.C. Gen. Stat. § 97-88 is hereby denied.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff for reasonably necessary treatment of her back condition which was aggravated by her accident at work on December 1, 2001. *Page 11 
2. Defendants shall pay plaintiff accrued benefits of $ 18.85 per week for the difference between $ 236.74 per week and $ 255.59 per week for the period of 5 and 2/7ths weeks of benefits from December 2, 2001 through January 10, 2002.
3. Defendants shall pay plaintiff ongoing total disability at the rate of $ 255.59 per week beginning November 25, 2002 and continuing until further Order of the Commission. All accrued amounts shall be paid in a lump sum.
4. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff is approved for her attorney of record and twenty-five percent of the lump sum due plaintiff shall be deducted and paid directly to her counsel. Thereafter, every fourth check shall be paid directly to plaintiff's counsel.
5. Defendants shall pay the costs.
This the 8th day of May, 2007.
 S/______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING: S/______________ BUCK LATTIMORE CHAIRMAN
 S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1